UNITED STATES *v.* PAGE N. GOFFIGON (No. 4861)[1]

United States Court of Customs and Patent Appeals, June 20, 1956

[1] C. A. D. 625.

*Warren E. Burger*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*William J. Vitale*, trial attorney, of counsel), for the United States.

*John F. Kavanagh* for appellee.

[Oral argument April 11, 1956, by Mr. Vitale and Mr. Kavanagh]

Before JOHNSON, Acting Chief Judge, and WORLEY, COLE, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, pursuant to its decision, C. D. 1722, one member dissenting, sustaining a protest by the importer, appellee here, in overruling the collector's classification of the importation as "pumice stone, unmanufactured, valued at $15 or less per ton," dutiable at 1/20 cent per pound under paragraph 206 of the Tariff Act of 1930, as modified, *infra*. The court held the merchandise entitled to free entry as "Lava, unmanufactured" under paragraph 1708 of the Act.

The competing paragraphs follow:

Paragraph 206, as modified by T. D. 52476 and T. D. 52373:

Pumice stone:
  Unmanufactured:
    Valued at $15 or less per ton_____ 1/20¢ per lb.

Par 1708: [Free] Lava, unmanufactured.

The merchandise is described in the invoice as "Crushed Pumice Stone Aggregate Sand and Gravel." It is of volcanic origin and indigenous to the Greek Island of Santorin. After being mined with picks and shovels the material is crushed once, then screened prior to lading for shipment. As imported, the pieces vary in size from about five-eighths down to one-sixteenth of an inch.

One Government contention is that because of the crushing and screening process, the merchandise should be classified as a manufactured product, but both the collector and the court agreed the merchandise is unmanufactured, the latter pointing out that the crushing and screening were carried out primarily to facilitate shipment and that any resultant benefit in the ultimate use was merely incidental. *Lackawanna Steel Co. et al. v. United States*, 10 Ct. Cust. Appls. 93, T. D. 38359. The record supports that conclusion.

Pumice stone is a form of lava, and the material here is clearly lava, whether or not it is also pumice stone. However, since the latter is the more specific of the two classifications it should be adopted if properly applicable. Accordingly, as stated by the Customs Court, "the basic question is whether the imported merchandise is embraced

within the provision 'pumice stone.'" The court noted the absence of any judicial or long continued administrative interpretation of that precise point. Since neither party alleged commercial meaning the court relied on the following definitions and interpretations:

Webster's New International Dictionary, 1930.

> A highly vesicular volcanic glass, produced by the extravasation of water vapor at a high temperature as lava comes to the surface; hardened volcanic glass froth. Its color is white, gray, yellowish, or brownish, rarely red. It is much used, esp. in the form of powder, for smoothing and polishing. Called also *pumice stone.*

The second edition, 1948, of the same work has a similar definition, as follows:

> A kind of volcanic glass that is so full of minute cavities that it is very light; hardened volcanic glass froth. The cavities are produced by the expulsion of water vapor at a high temperature as lava comes to the surface. Its color is white, gray, yellowish, or brownish, rarely red. It is much used, esp. in the form of powder, for smoothing and polishing. Called also *pumice stone.*

Funk & Wagnalls New Standard Dictionary, editions of 1930 and 1942, defines "pumice" (noting that it is also called "pumice stone") as follows:

> Volcanic scoria or lava, spongy or cellular from bubbles of steam or gas which it contained during liquidity; much used as a polishing material, especially when powdered.

The Summary of Tariff Information, 1929, compiled by the United States Tariff Commission and printed for the use of the Committee on Ways and Means of the House of Representatives when the bill which later became the Tariff Act of 1930 was under consideration by the Congress, contains the following under the heading "PUMICE STONE AND PUMICITE" and subheading "Description and uses":

> Pumice stone is a volcanic lava having a honeycomb structure. The marketable grades are:
>
> (a) Crude pumice as extracted from the mines, but excluding separately marketable lumps, and varying in size from chips to coarse sand.
>
> (b) Lump pumice, varying in size from about 1½ to 6 inches across, not conforming to any predetermined shape.
>
> (c) Lump pumice, trimmed or cut to shapes.
>
> (d) Powdered pumice.
>
> A commodity allied to powdered pumice is pumicite, a volcanic ash, weathered and contaminated by wind-blown sand and soil.
>
> Practically the entire supply of pumice and pumicite is used as an abrasive, either in solid form for polishing wood and metals or combined with liquids or fats to make cleaning and scouring soaps and pastes.

After considering the above definitions, the Customs Court observed:

> Were we to confine ourselves to that part of the common meaning of the term "pumice stone," as expressed in the above definitions, which deals with the description of the origin and physical characteristics of pumice stone, it seems clear that the merchandise at bar would undoubtedly be embraced within such description.

There is no doubt as to the soundness and correctness of that conclusion, yet the majority went on to say:

However, to do so would be to ignore an important part of the meaning of the term, namely, that which relates to its use. In fact, use is so tied to the meaning of the term that the noun "pumice" has been verbified and has the meaning "To clean, smooth, etc., with pumice" (Webster, *op. cit.*).

The majority of the Customs Court accordingly held that "pumice stone" as used in paragraph 206 of the Tariff Act of 1930 is limited to material which is suitable for use as an abrasive. It is contended by appellant, on the other hand, that the *eo nomine* provision for pumice stone in paragraph 206 is not a use designation and that the merchandise here involved is pumice stone within the meaning of that paragraph.

Although the record is somewhat conflicting as to whether the instant merchandise is suitable for abrasive use, in view of our conclusion it is not necessary to pass on that point.

From our examination of the authorities and precedents cited in relation to the facts here, we are of the opinion the well established rule governing designations of an *eo nomine* character is applicable. That rule is stated in *Nootka Packing Co. et al.* v. *United States*, 22 C. C. P. A. (Customs) 464, T. D. 47464, as follows:

The clear weight of the authorities on the subject is that an *eo nomine* statutory designation of an article, without limitations or a shown contrary legislative intent, judicial decision or administrative practice to the contrary, and without proof of commercial designation, will include all forms of said article.

The same rule was followed in *Crosse & Blackwell Co.* v. *United States*, 36 C. C. P. A. (Customs) 33, C. A. D. 393. Numerous decisions to the same effect are cited therein.

We do not think the fact that the name of a material may be used as a verb referring to some use of the material indicates the material is necessarily limited to such use. For example, "wax" is a verb meaning to coat with wax, and "paper" is a verb meaning to cover with paper, but it is obvious that wax and paper have many uses other than as coating or covering materials. Accordingly, the fact that "pumice" may be used as a verb suggesting use as an abrasive does not establish that the word is limited to substances suitable for abrasive use.

Although each of the quoted definitions states that pumice stone is extensively used as a polishing material or abrasive, none of them restricts identification of the material contingent on actual use, or suitability for use, in those respects. Similar statements of uses are frequently found in definitions of materials. For example, Webster's New International Dictionary (1923), in defining hydrofluoric acid, states it "is chiefly used in etching glass"; so, too, in defining potassium cyanide, it is said that "it is used especially in electroplating and in the cyanide process." It is obvious, however, those uses are stated by way of information only, and do not limit the meaning of the terms defined.

In our opinion, the common meaning of the term "pumice stone" is not limited to those varieties of that material which are suitable for use as abrasives.

As previously pointed out, there is no proof here of commercial designation distinct from common meaning, nor are we aware of any judicial decision or administrative practice which would impose any limitation on the meaning of "pumice stone." Accordingly, in harmony with the rule above quoted, the term must be held to include all forms of the material unless a contrary legislative intent is shown.

The basic rule in determining the intent of Congress is, of course, the language of the statute itself. The paragraph simply says "Pumice Stone." If it had been the intention of Congress to distinguish between grades of pumice stone suitable for use as abrasive and those grades which are not, it would have been a simple matter to do so by express language. We note that one rate of duty is provided in paragraph 203 of the 1930 Tariff Act for limestone "not suitable for use as monumental or building stone," and another rate is in paragraph 234 (c) for limestone "suitable for use as monumental or building stone." The failure to employ similar language with respect to pumice stone suggests there was no intention to distinguish between grades of that material on the basis of suitability for particular uses.

It is also significant that pumice stone is not mentioned in either of the two paragraphs (1514 and 1672) of the Tariff Act of 1930 which makes express mention of abrasives. If "pumice stone" were regarded as limited to abrasive materials it seems it would have been more appropriately listed under one of those paragraphs rather than in a separate paragraph elsewhere.

Appellee relies, among other things, upon the Government publication "United States Import Duties (1950)" in which pumice stone and pumicite are listed in the index under the heading "abrasive(s)." That indexing, of course, can have no direct effect in reflecting Congressional intent when the Tariff Act of 1930 was passed, but merely evidences the opinion of those who compiled the publication as to the meaning of the Act. Moreover, the inclusion of pumice stone as an abrasive does not necessarily mean that it is limited to such use; it may merely mean that pumice stone is commonly used as an abrasive, which is admittedly the case.

On the other hand, the Summary of Tariff Information of 1948, prepared in response to a resolution of the Ways and Means Committee of the House of Representatives for the purpose of bringing up to date the commodity summaries of tariff information, states, under the head of "pumice stone," that "Increasing amounts are being used as an aggregate in lightweight concrete work." While that statement likewise is not direct evidence of the intent of Congress in 1930, it is at least as authoritative and pertinent as the 1950 publication relied

on by appellee, and indicates the compilers of the 1948 Summary were of the opinion that "pumice stone," as used in the 1930 Act, includes material of the kind involved in the instant case.

Appellee cites portions of the legislative history of tariff provisions relative to pumice stone. That history undoubtedly shows that the chief recognized use of pumice stone, as of 1930, was as an abrasive or polishing material, but it does not *per se* establish a Congressional intent to limit the meaning of the term "pumice stone" to such forms of that material as are suitable for abrasive or polishing use.

We are of the opinion there are no circumstances present in this case which would require a departure from the general rule that an *eo nomine* designation, without limitation, includes all forms of the thing designated. It follows that the merchandise was properly held by the collector to be dutiable as pumice stone under paragraph 206 of the Tariff Act of 1930, regardless whether it was suitable for use as an abrasive.

Application of the precedents cited above to the facts here requires *reversal* of the judgment of the Customs Court.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL, J., because of illness, did not participate in the hearing or decision of this case.